# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 AUG 24 PM 1: 52

DEPUTY CLERK ___

Brandon Baston
Plaintiff

v.

Parkland Hospital
Defendant

**3-17CV2259-K**

Civil Action No.

**COMPLAINT**

I Brandon J Baston believe that, I was discrimminated against while working for Parkland Hospital on more than one occasion. Testimony given under oath by Parkland employees was proven not to be true! I had contacted The Parkland Ethics committee because of my discrimmation, I also contacted my Human Resource Rep, and was fired three days later. I also felt discrimminated against because I was denied a police Report that was generated by false testimony

\* Attach additional pages as needed.

| | |
|---|---|
| Date | 8-24-17 |
| Signature | Bnf Jl |
| Print Name | Brandon Baston. |
| Address | 3200 W. Walnut #108C |
| City, State, Zip | Garland, Texas, 75042 |
| Telephone | 816-216-8200 |

# EEOC Dismissal and Notice to Sue

Texas Workforce commission Letter by D. Leder. Findings Report.

# EEOC The Right to Sue case

- EEOC charge number of Discrimination 450-2016-03226
-
- Texas Workforce Commission new evidence file case number 1998766

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Brandon Baston<br>3200 West Walnut Street<br>Apt # 108-C<br>Garland, TX 75042 | From: El Paso Area Office<br>300 E. Main Drive, Suite 500<br>El Paso, TX 79901 |
|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative<br>Raul Ballesteros, Jr.,<br>Investigator | Telephone No. |
| 450-2016-03226 | | (915) 534-4526 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

**MAY 3 1 2017**

Enclosures(s)

Lucy V. Orta,
Area Office Director

(Date Mailed)

cc: Carolyn Foster
Deputy General Counsel
PARKLAND HEALTH & HOSPITAL SYSTEM
Legal Affairs Department
5200 Harry Hines Boulevard
Dallas, TX 75235

Gabrielle Klepper
SPIELBERGER LAW GROUP
202 S Hoover Blvd
Tampa, FL 33609

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Case # 1998766
D. LEDER
12-10-2015 01:30 PM.

Vea el otro lado de esta página para ver esta información en español.

**If your hearing is scheduled as a telephone conference call hearing, online registration for your hearing will be available on the day of your hearing.** If you want to register online rather than call in for your hearing, visit **https://tx.c2tinc.com/register** on the day of your hearing and follow the instructions on the web site. You will need the Case Number listed above. If your hearing is scheduled at an office location, participation by telephone may not be possible, please see the attached Notice of Hearing for more information.

When registering for your hearing, be sure to:

- Check the Case Hearing Details to make sure you are registering for the right hearing
- Enter a valid telephone number, including area code and any extension number, where you can be reached at the time of the hearing
- Enter on whose behalf you are appearing, usually Claimant or Employer
- Check the information you entered to make sure it is correct before you Submit your registration
- Write down the Confirmation Number you will receive when you Submit your registration
- After you write down the Confirmation Number, click Finish to complete your registration

To change any information before the hearing begins, go back to **https://tx.c2tinc.com/register** and follow the instructions to Update.

**Important: To participate in your hearing, you must either register online or call in within the 30 minutes before the time your hearing is scheduled. If you have any problems registering online for your hearing, call 1-800-252-3749 and speak with a receptionist within the 30 minutes before your hearing is scheduled to begin. See the cover page of this Notice of Hearing for more information.**

C

BRANDON BASTON
3200 W WALNUT ST APT 108C
GARLAND TX 75042-8801

| Date/Location | For Claimant | For Employer |
| --- | --- | --- |
| 12/10/2015<br>Telephone | BRANDON BASTON | SAM KRAUSS,<br>Representative<br>(No Testimony)<br><br>JASON MCCOY,<br>Evening Director<br><br>TAMMY TUCKER-SALMOND,<br>Human Resources Generalist<br>(No Testimony) |
| 01/05/2016<br>Telephone<br>(Continuance) | BRANDON BASTON | SAM KRAUSS,<br>Representative<br>(No Testimony)<br><br>JASON MCCOY,<br>Evening Director<br><br>TAMMY TUCKER-SALMOND,<br>Human Resources Generalist<br>(No Testimony) |

**CASE HISTORY:** A determination dated October 27, 2015 disqualified the claimant under Section 207.044 of the Texas Unemployment Compensation Act because the claimant was discharged from the last work due to misconduct connected with the work. The no payment period began September 27, 2015 and continues until the claimant returns to employment and either works for six weeks or earns wages at least equal to six times the claimant's weekly benefit amount. The claimant appealed.

The employer will not be billed.

**ISSUES:** The issues in this case include:

Whether the claimant separated from the last work as a result of a discharge based on work-connected misconduct or a voluntary quit without good work-connected cause.

Whether benefits paid to the claimant which are based on wages from this employer shall be billed to the employer.

**FINDINGS OF FACT:** Prior to filing an initial claim for unemployment benefits with the effective date of September 27, 2015, the claimant last worked from December 13, 2013, through September 30, 2015, as an Environment Service Technician I for the named employer, a hospital.

On October 1, 2015, the claimant was discharged after going to an area of the hospital he had been told not to go to the day before.

On September 21, 2015, the claimant went to an area of the employer's facilities called the "WISH" clinic. This was not the claimant's assigned area, but he had been finding needles in trash and found that the source of the problem was in the "WISH" clinic, an area of the hospital for pregnant women. The claimant notified nurses of violations that he found in that area. The claimant was told to leave the "WISH" clinic by the nurses he spoke to.

Later that day the claimant was spoken to by the evening director and two other employees and told not to go into the "WISH" clinic again. The following day the claimant returned to the "WISH" clinic and took notes on and photographed the trash handling violations that he observed in the area. The claimant later relayed these concerns to the management of the "WISH" clinic by email. The claimant was reminded that this was not his area and that the employer had someone to handle the trash for that area.

On October 1, 2015, the claimant was discharged for entering the "WISH" clinic after being warned not to. The employer has a progressive disciplinary policy. The claimant had been progressed through the steps of the employer's progressive disciplinary policy, but indicated that he had been cleared of wrong doing on one of his previous write-ups. The employer's policies allow for the immediate discharge of an employee for insubordination.

**CONCLUSIONS:** Section 207.044 of the Act provides that an individual who was discharged for misconduct connected with the individual's last work is disqualified for benefits until the individual has returned to employment and worked for six weeks or earned wages equal to six times the individual's benefit amount.

Section 201.012 of the Act defines misconduct to mean mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees, but does not include an act in response to an unconscionable act of an employer or superior.

The following decision has been adopted as a precedent by the Commission in Section **MC 255.10** of the Appeals Policy and Precedent Manual.

> Appeal No. 18-CA-77   The claimant was discharged because he failed, after having been advised by a memo which he had initialed, to turn in sales reports on a daily basis or to see to it that his staff did so.  The claimant had also continued to permit his wife to work on the employer's books despite instructions to cease this practice.  HELD: The claimant's failure to follow instructions constituted misconduct connected with the work.  Disqualification under Section 207.044.

In cases where the employer alleges misconduct, the employer must present credible and persuasive evidence sufficient to support a finding of misconduct by a preponderance of the evidence.  Moreover, all parties enter the hearing with equal credibility.  This Appeal Tribunal found that the testimony of both the employer's only firsthand witness and the claimant lacked a degree of credibility.  The evening director could not seem to remember much of anything other than that he warned the claimant not to enter the "WISH" clinic anymore on September 21, 2015.   However, the employer provided contemporaneous witness statements that backed the evening director's statement that the claimant had been warned not to return to the "WISH" clinic prior to September 22, 2015.  The employer chose not to present any additional firsthand testimony to corroborate the evening director's version of events.  Despite the weakness of the employer's case presented in this hearing, when the employer probably could have presented a strong case by calling another firsthand witness, this Appeal Tribunal finds that the employer did manage to present just enough evidence to meet its burden of proof and overcome the claimant's denial that he had been warned not to enter the "WISH" clinic, prior to September 22, 2015.

As the above cited precedent holds, failing to follow acknowledged policies or instructions is misconduct connected with the work.  Since the claimant had been previously warned not to enter the "WISH" clinic, and did so anyway, he failed to follow instructions from management.  Even if the claimant's discharge was in retaliation for something else, this Appeal Tribunal finds that the claimant did still fail to follow instructions even if his motivation for failing to follow those instructions was driven by a genuine concern for the safety of the employer's employees and patients.  Thus, the claimant's actions in this case were a mismanagement of his position of employment which constitutes misconduct connected with the work, as defined in the Act.  Therefore, the Appeal Tribunal must hold that the determination dated October 27, 2015, which ruled that the claimant was disqualified from receiving benefits under Section 207.044 of the Act, beginning September 27, 2015, will be affirmed.

Section 205.013 of the Act provides that at the end of each calendar quarter the Commission shall bill each reimbursing employer for an amount equal to the amount of the regular benefits plus one-half (1/2) of the amount of the extended benefits paid during such quarter which are attributable to service in the employ of such employer, except that a state, a political subdivision of a state, or any instrumentality of any states or political subdivisions of a state, that is a reimbursing employer shall pay 100 percent of the extended benefits paid, and reimbursements shall be paid by the reimbursing employer to the Commission.

If a reimbursing employer pays a reimbursement to the commission for benefits paid to a claimant that are not in accordance with the final determination or decision under this subtitle, the employer is not entitled to a refund of, or credit for, the amount paid by the employer to the commission unless the employer has complied with the requirements of Section 208.004 with respect to the claimant.

Section 205.0125 of the Act, effective for claims dated September 1, 2015, and later, provides that notwithstanding any other provision of Chapter 205 of the Act, a reimbursing employer is not liable for paying a reimbursement for benefits paid to an individual, regardless of whether the employer was named as the individual's last work, if the individual's separation from work with the employer resulted from the individual being discharged for misconduct or voluntarily leaving work without good cause connected with the individual's work.

As the claimant was discharged for misconduct or voluntarily leaving work without good cause connected with the individual's work, the employer will not be billed for benefits paid to the claimant.

**DECISION:** The determination dated October 27, 2015, disqualifying the claimant under Section 207.044 of the Act beginning September 27, 2015, and continuing until the claimant has returned to employment and either worked six weeks or earned wages at least equal to six times the claimant's weekly benefit amount, is affirmed.

The employer will not be billed.

D. LEDER
Hearing Officer

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Antonio Field Office**

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
Toll Free: 866-408-8075
Potential Charge Inquiries: 800-669-4000
TTY (210) 281-7610
FAX (210) 281-2522

Dallas District
  San Antonio Field Office
  El Paso Area Office

July 10, 2017

Brandon Baston
3200 West Walnut, Apt 108C
Garland, TX 75042

RE:   EEOC Charge No. 450-2016-03226
      Brandon Baston v Parkland Health & Hospital System

Dear Mr. Baston:

This is to **acknowledge** receipt of your recent request for a copy of your file.  Your request was received by the San Antonio Field Office on June 27, 2017.  It will be processed by Dan Whalen who can be reached at (210) 281-7680.

If you have any questions, please contact me between 8:00 a.m.- 3:30 p.m., Monday through Friday at (210) 281-7667.

Sincerely,

Estella Romanos

Estella Romanos
Office Automation Assistant
Safofoia.safofoia@eeoc.gov

# First Incident report

## Corrective Action Report

## Ethics Report

## First Police Report

Received 10/19/2015 9:20:21 AM [Central Daylight Time] in 09-20 on line [4] for: Fort Worth Attention To - Pg 10 / 18

From: Stephanie Hernandez Fax: (720) 306-9638    To: 5123222843@rcfax.com Fax: +15123222843    Page 10 of 18 10/19/2015 8:20 AM

Case 3:17-cv-02259-K-BN    Document 3    Filed 08/24/17    Page 13 of 53    PageID 17

SSN 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 Brandon Baston
46

# PARKLAND HEALTH & HOSPITAL SYSTEM
## CORRECTIVE ACTION REPORT

Employee Name: Brandon Baston          Emp. #: 44397          Dept. #: 80900

Job Title: Tech 1          Date of Employment: 01 / 02 / 2014    Salary Review Date: 12 / 31 / 2014

| Reason for Conference (check one): | Previous Counseling(s) for same policy violation Show dates of Counseling: | |
|---|---|---|
| ☑ Verbal Warning | ___/___/___ Verbal Warning | Copy of Employee Problem Solving Procedure Given N/A |
| ☐ Written Warning | | |
| ☐ Final Warning | ___/___/___ Written Warning | |
| ☐ *Termination (see Termination Checklist) | | |
| ☐ Investigative Suspension | ___/___/___ Suspension | Check out process N/A |
| # of Days: _____ | | |
| Return to Duty: ___/___/___ | ___/___/___ Final Warning | |

1. Violation of Procedure (Number and Title): 6000-700A Performance and/or behavior issues which are significantly below

2. Describe reason for Corrective Action. Attach applicable documentation and please use additional pages for continuation.
On Tuesday, June 10th Mr. Baston worked overtime during the first shift between 630A-200pm in the pathology/ Microbiology department. During that period it was report by management in the pathology department that Brandon Baston was very rude and she asked me to ensure that he never works in that department again. Shortly there after I personally observed Mr. Baston not working for more than an hour. When asked about his whereabouts he became very disgruntled and kept repeatedly saying he had been working when I knew this was not the truth he had not been seen in over an hour working bringing down trash down from the soil return rooms.

3. State recommendations. List policies, procedures, job responsibilities reviewed. State what will happen if recommendations are not followed. State next review date if applicable.
I would suggest that Mr. Baston use a friendly approach when here at Parkland (especially when working in a department he is not familiar in) and also taking the time to communicate with his direct manager when he has to leave his area or when he has any issues or concerns which would keep him from doing a successful job in the future.

4. Employee's Comments:

Date of Conference: 06 / 16 / 2014
**Signatures:**                    ID #: 35820

Counselor: _____          Ext.#: 23141

Employee: _____ (I N. Protest)

Witness of Employee's refusal to sign: _____

| Date: ___/___/___ |
|---|
| Reviewed by: _____ |
| Date: ___/___/___ |
| Dept. Director: _____ |

Your signature indicates only that you have received this Corrective Action. It does not indicate agreement with the statements.

*Termination Checklist. Initial after completion and submit to HR Records within 3 calendar days from date of termination.
_____ Reviewed by Human Resources (if applicable)          _____ Involuntary Resignation Form
_____ HR Records Action Form          _____ Payroll Adjustment Form

| Distribution: | **Verbal Warning** | Original – Department File | Copy 1 – Employee | |
|---|---|---|---|---|
| | **All Other Corrective Action** | Original – Employment Experience | Copy 1 – Department File | Copy 2 – Employee |

PS 4164 08/01/05 RTB

**Report Submission Date**
11/24/2015

**Reported Company/Branch Information**

| Name | Parkland Health and Hospital System |
|---|---|
| Location | Main Hospital Bldg - 1st Flr - Main 5201 Harry Hines Blvd |
| City/State/Zip | Dallas, TX, 75235 |

**Violation Information**

**Issue Type**
Non-Retaliation

**What is your relationship to Parkland?**
Other

**If Other, describe your relationship with Parkland. (optional)**
Terminated employee.

**Please identify the person(s) engaged in this behavior:**
Leroy Garth - Manager

**Do you suspect or know that a supervisor or management is involved?**
Yes

**If yes, then who?**
Leroy Garth - Manager

**Have you reported this issue to your direct supervisor or another member of the management team?**
Yes

**Has HR been contacted?**
Do Not Know / Do Not Wish To Disclose

**What is the general nature of this matter?**
Retaliation

**Where did this incident or violation occur?**
Onsite

**Please provide the specific or approximate time this incident occurred:**
Brandon is unsure of the date of the original report, but he was terminated on 9/30 as a result.

**How long do you think this problem has been going on?**
1 to 3 months

**How did you become aware of this violation?**
It happened to me

**To your knowledge, has anyone tried to conceal or cover up this matter?**
Do Not Know / Do Not Wish To Disclose

**Details**
Brandon filed a report, is unsure of the date of the original report and he doesn't have the access codes available to him anymore.

He wanted to file a report for retaliation because he believes he was terminated as a direct result of having filed a complaint against Leroy Garth for harassment.

Brandon would like access to the original report information for legal purposes.

| Destination | Type | Mode | Page Note | Time | Start Time | Result | Details |
|---|---|---|---|---|---|---|---|
| 2145902707 | FAX | Fine | | 1 | 11/24 01:31pm | 00.37" | 0 K |

TTI Number:
Sender: GUEST   TTI,1:WFS GARLAND

Nov 24 2015 01:32pm
P1

* * Transmit Confirmation Report * *

**DALLAS COUNTY HOSPITAL DISTRICT**
**POLICE DEPARTMENT**
**INFORMATION REPORT**
5201 HARRY HINES BLVD., DALLAS, TEXAS, 75235
**PHONE: 214-590-8362  FAX: 214-590-2717  dchd-pd@phhs.org**

| LOCATION OF OCCURRENCE / ADDRESS | DATE / TIME REPORTED | CASE NO. |
|---|---|---|
| GROUND FL.CENTER SECTION / 5201 HARRY HINES BLVD., Hot Lab | 01/21/2015 20:51 | 1500631 |

| CODE SECTION | CRIME | CLASSIFICATION | LOSS | RECOVERY |
|---|---|---|---|---|
| | SUSPICIOUS PERSON | SERVICE | 0 | 0 |

| FROM: DATE/TIME | TO: DATE/TIME | APPROVED | CASE STATUS |
|---|---|---|---|
| 01/21/2015 20:30 | 01/21/2015 20:38 | YES | |

ADDITIONAL CATEGORIES

| | | | | ITEMS IN REPORT | |
|---|---|---|---|---|---|
| ☐ ALCOHOL RELATED | ☐ DRUGS INVOLVED | ☐ SENIOR CITIZEN | ☐ ARREST OCCURED | ☐ SUPPLEMENT | ☐ PICTURE/IMAGES |
| ☐ TRAFFIC RELATED | ☐ GROUP/GANG INVOLVED | ☐ WEAPONS INVOLVED | ☐ DOMESTIC VIOLENCE | ☒ FOLLOW UP | ☐ PROPERTY/EVIDENCE |

COPIES TO

| ☐ INVESTIGATIONS DIVISION | ☐ PATROL | ☐ C.E.O | ☐ OTHER AGENCY | ☐ INTERNAL AFFAIRS |
|---|---|---|---|---|
| ☐ CHIEF OF POLICE | ☐ CRIME PREVENTION | | | |

| INV S | NAME: BASTON, BRANDON | SUFFIX | RACE B | ETHNICITY NON HISP | SEX M | AGE | DOB | HT | WT | HAIR | EYE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SSN | | DRIVER'S LIC. NO. | | | STUDENT ID EMP #44397 | | | TYPE | | | |

| ADDRESS TYPE | STREET NUMBER | STREET NAME | | SUITE NUMBER | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|
| Home | 3200 | West Walnut st | | | Garland | TX | 75042 |

| INV C | NAME: ESCONTRIAS, FRANK 26092 | SUFFIX | RACE | ETHNICITY | SEX | AGE | DOB | HT | WT | HAIR | EYE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SSN | | DRIVER'S LIC. NO. | | | STUDENT ID | | | TYPE | | | |

| INV O | NAME: MILLS, JOE #60838 | SUFFIX | RACE | ETHNICITY | SEX | AGE | DOB | HT | WT | HAIR | EYE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SSN | | DRIVER'S LIC. NO. | | | STUDENT ID | | | TYPE | | | |

NARRATIVE

On 01/21/2015 at approximately 2051 Hours, I Officer Pallares was dispatched to a suspicious person in the Hot Lab. Upon arrival I met with Supervisor Escontrias, Frank #26092 who stated that a person with environmental service uniform came in and just started to walk around and when he asked him what he was doing the employee later identified as Baston, Brandon #44397 by his supervisor Mills, Joe #60838 said "I'm doing my job". Escontrias stated that he asked Baston 3 times and he had the same response. Escontrias stated that the employee refused to give his name or badge information and walked around for about 2 minutes, grabbed some gloves and walk out. The employee did that 2 times. Supervisor Escontrias stated that his supervisor Joe Mills came and said that he would take care of it and stated "I'll make sure he doesn't come in here anymore". I spoke with Baston supervisor Mills who stated that he was just getting gloves out of there to throw out some trash. Supervisor Mills stated he told Baston that he did not need to be in there and when someone ask for his name and badge he needs to provide it for them. I advised Escontrias that a report will be generated and gave him the case number and phone numbers. I cleared the call.

| REPORTING OFFICER PALLARES, CARLOS | REVIEWED BY MERRYMAN, THOMAS | | APPROVAL DATE 01/21/2015 | |
|---|---|---|---|---|
| SIGNATURES | | PRINT DATE AND TIME 11/24/2015 08:57 | PRINTED BY BIRBECK, DAN | PAGE NO. 1 of 1 |

# Claimants written statement

## Rebuttal statement and evidence

The New Evidence file supported case by Texas Workforce Commission
Case number 1998766
EEOC closed case file number Rights to Sue Charge number 450-2016-03226

Brandon Baston
Contact info: 3200 West Walnut Garland Texas 75042 Apt. 108c
816-216-8200.

To The Director of The Equal Opportunity Commission, I am writing this letter to help further my case against Parkland Health Hospital concerning the charge of race discrimination. I am contacting you with new evidence from my attorney and council D. Leder from "The Texas Workforce Commission" case number (1998766). This case file contains sworn in written and verbal statements given under oath by Parkland Directors, Managers and employees and also the Human Resource Representative Laura Haynie. I ask that the EEOC reevaluate the in depth written statements and testimony given about the dates of 9/21/2017 and 9/28/2017 entered under oath during the separation process from Parkland Health Hospital. I also would like the EEOC to reinvestigate the charge of race discrimination, with the possible charge of retaliation in conjunction with this case. Retaliation was uncovered by D. Leder in his final findings during the separation process of "insubordination" from Parkland Hospital. The new evidence charge of retaliation was uncovered by "The Texas Workforce Commission" summation report.

I ask the EEOC for assistance in finding a lawyer to help fight my case of race discrimination and also to charge Parkland Hospital with a more serious charge of Retaliation that was uncovered in the final findings of my TWC legal hearing, by D. Leder.

In the revaluation of your investigation, you will uncover a "Corrective Action Report" on the conference date of 6/16/2014 between Leroy Garth, my acting manager and Brandon Baston. It states, that I was working in the Bio-Hazard lab or (Hot Lab) and a complaint was made by an employee to the EVS management team. This first complaint was made by a Parkland "Pathology" employee. This employee approached me at lunch time while I was using the "Pathology" breakroom.  She asked my manger Leroy Garth, never to have Brandon Baston work in the "Pathology lab" ever again, even though I had outside badge clearance. But, later on that day I received a disciplinary action report from Leroy Garth. It stated I was rude to another employee. This employee made it known that I was not welcomed in there break room. I was assigned to this area on that in particular morning, concerning this conference date of 6/16/2014. But later on that day, I had to get in contact with Parklands "Ethics Hotline" because Leroy Garth ask me, Quote un Quote, "Where in the Fuck have you been?", while I pulling was trash from the floors. I found this to be very offensive and I felt belittled. My Ethics Complaint number is as follows (701830069301), Passcode (1016).

In the Texas Workforce file you will also find my first Police report case number (1500631) on the date of 1/21/2015, where I was burning blood, feces and urine on the back dock, located

next to the "Pathology Lab" with my acting manager Joe Mills. I and Joe Mills needed gloves for our safety while disposing of hazardous waste in our Decontamination machines. So I scanned my badge and entered the (Bio lab/ Hot Lab). Once again I was stopped. This time by Frank Escontrias, the Director of "Pathology". He asked me "What was I doing in here"? I responded doing my job. He became very persistent by yelling across the lab in trying to get me to come next to him. I walked away and continued to do my job. Later on that night I found out that he had contacted Parkland P.D. and made a "Suspicious Person" report in the "Pathology Lab" or (Hot Lab). I was investigated and released.  Police report Case number (1500631).

On the following day I felt that race played a big part in him calling the Police and also trying to get me fired. So I walked to the Parkland Police station on the following evening. "The Parkland Police Department" told me that they could not release the investigation report. So I sat down with an associate of the "Parkland Police Department" to find out the reason why they couldn't release the investigation report. He asked me "Did I enjoy working for Parkland Hospital?" Quote unquote. So I didn't further pursue this issue. This made me feel like I was discriminated against once again. Whether color was involved or not, the denial of the police report (1500631) date was 1/27/2015. This Police report involves Supervisor Frank Escontrias (Bio-Hazard Lab/ Hot Lab) and also Officer Pallares of "The Parkland Police Department". My documented report number is (1500631).

The "Wish Clinic" incident reports consist of Katrina young, Gabrielle Crockett and the Director Susan Lamb. The Environmental service reports consist of Raymond Robinson, Dameyon Evans, John Walls and Bianca Romero and Director Alan Williams. The Human Resource reports consist of Laura Haynie and involves Officer Dan Bireck.

In the next evidence report, it involves "The Parkland Police Department", but now "The Wish Clinic" at Parkland, instead of the "Pathology Lab". In the TWC hearing file of new evidence, you will find my incident report and also my rebuttal work schedule that states on August 24th of 2015, that states Brandon Baston as Bio Tech two. This would contradict the titled position of Trash Tech one that was giving at the hearing between I and "Parkland Hospital".

In the "TWC" hearing you will find evidence of sent emails between Brandon Baston to Raymond Robinson dated on 9/25/2015. Raymond Robinson was the acting Supervisor for Environmental Service and was over "The Wish Clinic" at the time of the incident on 9/21/2015. Email evidence sent to Raymond Robinson about the "Wish Clinic' includes pictures of needles in the trash, thrown away full urine bottles in un-marked bags also in the emails you will find that patient syringes were not being disposed of correctly in the "Wish Clinic", at Parkland Hospital. I feel like this is what caused me to be terminated as I desperately attempted to reach my Human resource representative Laura Haynie.

I felt like color played a major role because after I was identified as an Environmental service worker for "Parkland Hospital" by employees Katrina Young and Gabrielle Crockett and in there sworn written statements entered under oath, I found out that they maliciously contacted the "Parkland Police Department" in trying to have me terminated. Once again, I was a person of interest with the "Parkland Police Department" in a "Creepy" "Suspicious Person" report given under oath by Susan Lamb. These generated "Police reports" were filed by the "Wish Clinic" employees, not patients. My coworkers for the second time while working at "Parkland hospital"

deliberately misused the Parkland Police Department. Katrina young and Gabrielle Crockett pursued in calling in a "Suspicious Person" report even after I had been identified as an employee for Parkland hospital. I found this discriminating.

The "Wish Clinic" was the second incident that generated a police report while working as an Environmental service worker at "Parkland Hospital". But this time the incident occurred in "Wish Clinic" not the "Pathology Lab". Even though there is a lack of racial discrimination evidence in these two separate cases, co-workers involved "The Parkland Police". I believe the actions that were taken by the director Susan Lamb, the nurses Katrina young and Gabrielle Crockett, and also by the Director Frank Escontrias and Bianca Romero in these two similar incidents to be race motivated, and I feel that I was discriminated against.

I ask that the EEOC order a reinvestigation into the possibility of a covert retaliation charge in conjunction to the race discrimination charge against "Parkland Hospital" and its surrounding employees sworn testimonies. These sworn in statements under oath involves my "TWC" Legal Hearing officer D. Leder. I find these written statements to be relevant in presenting new evidence to the EEOC, in helping me further my efforts in proving race discrimination and retaliation against "Parkland Hospital". My "TWC" hearing officer D. Leder found relevant evidence of emails dated by Laura Haynie on 9/28/2015 and the actual written testimony from Bianca Romero on the same date of 9/28/2015 to have merit in the presenting new evidence of retaliation to the EEOC.

In my next TWC evidential file, you will find my acting Environmental service manager Bianca Romero testimony for EVS, she met with Susan lamb on the date in question of 9/21/15, the same day Katrina Young and Gabrielle contacted Parkland P.D.. But, Susan Lamb nor Bianca Romero were present on that date of 9/21/2015 in the "Wish Clinic". Nurses Katrina Young and Gabrielle Crockett in sworn written statements were actually written on the date of 9/30/2015. This was after Laura Haynie emailed the Director of Environmental service Alan Williams. As the EEOC reexamines statements put together by nurses Katrina Young and Gabrielle Crockett and also the EVS manager John Walls on (9/22/2015), the EEOC will confirm the reason why I was in the "Wish Clinic". To document health violations so it could be handed over to my Human resource representative Laura Haynie. Even though there was a lack of overt racism in my case, the EEOC cannot ignore the fact that there is more than enough of over welling evidence to support and question of retaliation at Parkland Health Hospital. This was discovered by my TWC lawyer D. Leder in his final summation report. In the D. Leder report, he found the emails to be significant evidence in his final finding of his report. New evidence was uncovered in my (TWC) hearing case number (1998766). This new evidence was discovered during the separation hearing in my TWC appeals case by tracing the dated emails up to and around speaking with Laura Haynie on 9/28/2015.

In the sworn written statement entered into evidence by nurse Katrina young about the incident on 9/21/2015 states that she saw an EVS worker pulling trash and documenting the "Point of Care Rooms". Katrina also stated that she contacted Susan Lamb the Director. Then she stated afterwards an EVS manager came and also gave a vague description of an Environmental service worker. Never in her sworn written testimony did she state that she knew who he or she was on the day of 9/21/2015 in the "Wish Clinic". Neither Susan Lamb nor Katrina young knew

who this EVS worker was on 9/21/2015.

In the written statement entered into evidence by Gabrielle Crockett about the 'Wish Clinic' incident on 9/21/15, it states that she witness an EVS worker documenting Environmental infractions in the "Point of Care rooms" in the "Wish Clinic". She states "At this time Katrina Young attempted to call an EVS manager, and when she wasn't unable to reach anyone, she called "The Parkland Police Department." She also stated that on the next day, on Tuesday 9/22/2015, "I was leaving work and passed that employee by on the bus stop and hurriedly walked by." That hurt.

In the written sworn statement of Susan Lamb entered into evidence by TWC concerning the date of 9/21/2015 stated that the nursing staff informed her of an EVS technician by the name of Brandon Baston was pulling trash. Susan Lamb reports about a "Creepy Suspicious Person" report that was given to officers was found not to be true, according to written statements entered into evidence by nurses Katrina Young and Gabrielle Crockett about what took place in the "Wish Clinic" on the date of 9/21/2015. The two "Wish Clinic" nurses stated in there written statements that they didn't know who the Environmental service worker was, and they also stated that we never saw him again after that date. This makes Director Susan Lamb statement clearly not true. But by comparing Susan's Lamb written testimony to the two nurses Katrina young and Gabrielle Crockett written admissions to the TWC hearing about the day of 9/21/2015, Susan Lamb admits in speaking with EVS manager, Bianca Romero on the date 9/21/2015. But neither Bianca Romero nor Susan lamb were present at the time of the incident in the "Wish Clinic". Susan Lamb also had claimed in her sworn statement to have spoken to Raymond Robinson on the date of 9/22/2015, this is the same Manager I sent the pictures to of needles in the trash by email on the 9/25/2015. I find Susan Lambs testimony to be false because this is not what her nursing staff Katrina young and Gabrielle Crockett contested to in there sworn Affidavits about what occurred on the date of 9/21/15 in the "Wish Clinic".

Bianca Romero the (EVS Manager) for the "Wish Clinic", written statement is filed on the date of 9/28/2015, the same date Alan Williams the Director over Environmental Service receives an email from Laura Haynie, the Human Resource Representative. Bianca Romero states, "Based on the description, we were able to know that the person was Brandon Baston". Then Bianca Romero implicated Dameyon Evans. Bianca Romero said that Dameyon Evans had seen Brandon Baston in the clinic after making his rounds. This statement was found out not to be true according to Dameyon Evans written testimony.

Dameyon Evans (EVS manager) in his sworn statement on 9/23/2015 does not back up Bianca Romero's statement of seeing a "male with blue jeans and a Badge" in the clinical area at any point. Dameyon Evans states in his written testimony stated that we were looking for Mr. Baston and was not able to contact him. Also in his sworn testimony he states that he went to the Cafeteria and seen Brandon Baston at Lunch and asked him about the "Wish Clinic" incident with Bianca Romero. The statements given in the legal hearing by EVS Dameyon Evans and EVS Bianca Romero do not corroborate one another and must be assumed to be false.

I find that these sworn statements given by the Director Susan lamb "Wish Clinic" and EVS manger Bianca Romero to be suspect retaliation and holds no water. I also find it to be odd but highly relevant to my case that the emails sent from Human Resource representative Laura Haynie on 9/28/2015 to EVS Director Alan Williams that involved "Parkland Hospital" Police officers Dan

Bireck and Ruby Taylor not to be email coincidences. Because the evidence shows that I was fired three days later, before I was able to set up a meeting with my Human Resource Representative concerning un-safe conditions at Parkland Hospital.

Attention: Anna Gonzalez
**40 A**    Case 3:17-cv-02259-K-BN    Document 3    Filed 08/24/17    Page 22 of 53    PageID 26

File: 003424826

RE: Brandon Baston 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

**Adjudicator Call Sheet**

 employersedge

10/16/2015

Call Received: 10/16/2015

Adjudicator Name: Anna Gonzalez

Phone Number: 817-420-1930

Client: 117100  Parkland Health & Hospital System

Completed? NO

Response Due: 10/20/2015 1:44 pm

State: Texas

Fax Number: 512-322-2843

Claimant: 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  Baston, Brandon

Business Unit: 80900  Enviro Serv-PMH

**Information Needed:**

10/16/2015 2:43:05 PM Any other witness statements to the final incident - Would like to verify the date of the final incident - any prior warnings - copy of policy - Claimant states that he was in charge to the biohazard material so was to go throughout the entire hospital - rebuttal

**Response:**

Please see the employer's response attached along with additional documentation.

Stefanie Hernandez / Claim Specialist

720-891-4900 x141



NOTES: "Lesson: Theres always gonna to be something wrong.

1) It doesn't have to

# Parkland

## Parkland EVS Individual Work Schedule

| Week 1 Sun | Week 1 Mon | Week 1 Tues | Week 1 Wed | Week 1 Thu | Week 1 Fri | Week 1 Sat | Week 2 Sun | Week 2 Mon | Week 2 Tues | Week 2 Wed | Week 2 Thu | Week 2 Fri | Week 2 Sat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OFF | 2:00PM 10:30PM | 2:00PM 10:30PM | OFF | 2:00PM 10:30PM | 2:00PM 10:30PM | 2:00PM 10:30PM | 2:00PM 10:30PM | OFF | 2:00PM 10:30PM | 2:00PM 10:30PM | 2:00PM 10:30PM | 2:00PM 10:30PM | OFF |

Work Schedule as of:     August 24th, 2015

Job Assignment:     Bio Technician 2     Focus point!

Employee Name:     Brandon Baston

Employee Signature:

Manager Signature:

Why Door Support?
Don't other?
Ass. Manager
Points

Memo: My Direct

But me corp My Direct
"WFS" MANAGER Talked About tech. 3
(Socially, Economic,...)

# Texas Workforce evidence

Emails

Pictures

Sworn in testimonies given under oath by Brandon Baston and "Wish Clinic" Employees.

Received 10/19/2015 9:20:21 AM [Central Daylight Time] in 09-20 on line [4] for: Fort Worth Attention 10 - Pg 5 / 18
From: Stephanie Hernandez Fax: (720) 506-9659    To: 8123222843@rcfax.com Fax: +18123222843    Page 5 of 18 10/19/2015 8:20 AM

SSNA4 Case 3:17-cv-02259-K-BN Document 3   Filed 08/24/17   Page 25 of 53   PageID 29
2015-09-22-04  Brandon Baston
*Page 6 of 10*

Please see below. As you can see Brandon continues not to following proper
protocol and also is not in his assign area.. We have already had a conversation
with Brandon on this matter. What can we do to rectify this situation?

Thank You,




-----Original Message-----
From: Raymond Robinson
Sent: Friday, September 25, 2015 1:48 PM
To: 'Brandon Baston'
Subject: RE: Environmental Violation

Thank You, I will follow up on this matter but we have Marques to cover that area.
Just make sure you contact your manager Dameyion Evans for your direct
assignment . Thanks Brandon!

-----Original Message-----
From: Brandon Baston [mailto:Baston79@Hotmail.com]
Sent: Thursday, September 24, 2015 11:59 PM
To: Raymond Robinson
Subject: Environmental Violation

Urine found in un-marked clear bag. This is a environmental infraction.
Suggestion: replace clear bags with red bag and add contamination covering to
eliminate potential threat of contamination to parkland hospital. Rec. Action: Place
" The point of Care" rooms" in the "Wish building"under observation until the
potential threat of cross contamination is alleviated. Thank you, Brandon ( Bio
Hazard ).

Sent from my Boost Mobile Phone.

---

| | |
|---|---|
| 09/28/2015 EE Brandon came to PSSB-ER. I copied his statement and told him to speak to Alan first. | **From:** Laura Haynie<br>**Sent:** Monday, September 28, 2015 1:48 PM<br>**To:** Alan Williams<br>**Subject:** Brandon Baston<br><br>Hi Alan. Brandon Baston brought a written statement to me and asked to meet with me. I made a copy of his statement and asked him if he had met with you yet; he indicated he had not. I presented my business card and asked that he get in touch with me after he has met with you. Today I received Ms. Bianca Romero's statement; I am awaiting statements from Dameyon Evans and from John Walls.<br><br>*Many thanks,*<br>*Laura Haynie, SPHR, SHRM-SCP*<br><br> Parkland<br><br>Employee Relations Advisor<br>Office of Talent Management<br>Parkland Health & Hospital System | Dallas, TX  75235 |









this includeds the 22 and 21rst
of this month. ~~had~~ ~~I~~ ~~Do~~ ~~I~~

I Do The SAME Job Daily

INVESTIGATION STATEMENT

Employee Name: Brandon Basten   Employee Number: _____

Work Extension: _____   Department: __EVS__

Date: __21·22__                        30 min

Note to complainant:   If you are the complainant, please state your allegation.   State the
name(s) of individual(s) who witnessed the incident.   Specify the date, time and description of
what occurred.   Include what resolution you are seeking regarding your complaint.

Note to witness:   If you are the witness, please describe what you observed and/or heard
regarding the alleged incident.   Specify the date, time, place and description of what occurred.
Include names of anyone else who witnessed the incident.

Note to accused:   If you are the accused, please respond to the allegation.   Specify the date, time,
place and description of what occurred.   Include names of anyone else who witnessed the
incident.

I was making Rounds, Checking
for needles in the trash.
I started on the lrst floor. & and I worked
my way to the fouren floor.
When I reached the nurses
area. I found a environmental
infraction. A nurse approached
me and ask me What I was doing.
I explain to here that she
Could not throw urine bottles
in the clear bags of trash.
As we started to talk, she startec   Complete and sign on the back
freaking out and had to be pullec
away by other nurses. It seems to
me she was huper-ventilating



From that moment on, I a explain
to another NURSE, When you
throw hazardous material in
the trash, parkland will be
fined. A young lady explain
to me I could not enter the
exams Room. I expressed to
her that the trash was over-fill,
and out-of-compliance with
Environmental regulation, After
this took place, I documented
the urine in the clear bags at
Stations. (02-141), and Station (03-141),
and left. Then notified my manag
of these violation.

I have fully disclosed above all such facts, reasons, and persons. I acknowledge the following:

- I have been advised not to share any of the information that we have discussed today and that all of the issues discussed in this meeting are to remain confidential.
- I have been advised that Parkland Health & Hospital System has a no tolerance policy on retaliation. Anyone making a complaint will not be retaliated against, even if a complaint made in good faith is unfounded. In addition, witnesses will be protected against retaliation. Any identified retaliation will be dealt with through corrective action, up to and including termination.
- I have been advised that harassment accusations that are determined to be false will also result in corrective action, up to and including termination.

Signature: _____     Employee Number: 44397

Date: 9-24-15

I feel this would not be a problem
if I didn't find a violation in there
unit. As Parkland illustrated, I annouced
my self in every unit I entered. She fant

### Benefits – Non-Monetary Determinations
### Fact Finding

SSN: **XXX-XX-4662**     **BRANDON BASTON**          Case Nbr: **7**
Issue Nbr: **1**     Type: **FIRED**     Reason: **PERFORMANCE**
Stmt Nbr: **1**     of: **8**     Stmt of: **Claimant**          Taken: **10-02-2015 09:31:26 AM**

Name: **BRANDON BASTON**     Title:
Phone Stmt: **Y**     Claim ID: **2015-09-27**     Claim Dt: **09-27-2015**     Rebuttal: **N**     Footnote: **Y**

**Why were you fired? I FOUND URINE IN UNMARKED BAGS, NEEDLES IN UNMARKED BAGS**
 **INSTEAD OF BEING PROPERLY DISPOSED OF IN BIOHAZARD BAGS. I GOT INTO IT WITH**
 **MANAGEMENT ABOUT IT BECAUSE I BELIEVE SAFETY COMES FIRST, & I WAS FIRED.**
**Name and title of person who fired you? ALLEN WILLIAMS- DEPT. DIRECTOR**
**Was there a final incident that caused the discharge? If yes, explain. SAME**
 **AS ABOVE.**
**Job duties at time of termination ENVIRONMENTAL SERVICE TECH 1**
**How long had (you/him,her) been performing these duties? 2YRS**
**Any recent changes in job duties or job expectations? If yes, explain. NO.**
**What exactly was causing (their/your) dissatisfaction with the job**
**performance? I HAD A DISAGREEMENT WITH MANAGEMENT ABOUT FINDING BIOHAZARDOUS**
 **MATERIALS IN NON-MARKED BAGS.**
**Had (they/you) ever been satisfied with the job performance? YES, MY SPVSRS**
**If yes, why (were/was) (you/he,she) not performing up to standards at the**
**time of the firing? I FOLLOWED PROTOCOL AT ALL TIMES.**
**Ever warned, placed on probation, or suspended because of job performance?_ N**
**(For claimant:) Were you working to the best of your ability? YES.**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ END ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
WOULD VERBALLY PRAISE MY WORK.

### Benefits – Non-Monetary Determinations
### Fact Finding

SSN: **XXX-XX-4662**     **BRANDON BASTON**          Case Nbr: **7**
Issue Nbr: **1**     Type: **FIRED**     Reason: **PERFORMANCE**
Stmt Nbr: **2**     of: **8**     Stmt of: **Claimant**          Taken: **10-16-2015 12:32:06 PM**

Name: **BRANDON BASTON**     Title:
Phone Stmt: **Y**     Claim ID: **2015-09-27**     Claim Dt: **09-27-2015**     Rebuttal: **N**     Footnote: **YY**

**Ever warned, placed on probation, or suspended because of job performance?_ _**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ END ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
MY LAST DAY WORKED WAS EITHER 09/30 OR 10/01.
AS AN ENVIRONMENTAL SERVICE TECH I, MY JOB WAS TO MAKE SURE THAT THE     PATIENTS

SAFE AND THERE WAS NO CROSS CONTAMINATION BETWEEN BIOHAZARD MATERIAL AND PATIENT INTERACTIONS. MY ARE WAS THE WHOLE HOSPITAL SINCE I WAS THE ONLY THAT ONE THAT DOES BIOHAZARD MATERIAL IN THE HOSPITAL. IT WAS MY JOB THAT THE PATIENTS WERE SAFE FROM BIOHAZARDS LIKE NEEDDLES AND BLOOD. I MADE SURE THAT THE DISPOSAL OF BIOHAZARD WAS DISPOSE SAFETELLY. MY MAJOR OBJECTIVE WAS TO TRY TO PREVENT CROSS CONTA MINATION FROM PATIENTS TO HOSPITAL.
-ABOUT WHAT EMPLOYER SAID THAT I DID ON 09/21 AND 09/22 THAT I WENT INTO THE WISH CLINIC -NOT MY ASSIGNED AREA-WHEN FEMALES PATIENT WERE IN THE ROOMS,NO, THAT IS NOT TRUE THAT I WENT INTO THE ROOMS. BUT IT IS MY ASSIGNED AREA BECAUSE I DO THE WHOLE HOSPITAL. YOU MIGHT HAVE PATIENTS WITH HIV OR HEPATITIS IN DIFFERENT AREAS OF THE HOSPITAL INCLUDING THE WISH CLINIC. THE WISH CLINIC IS FOR PREGNANT WOMEN THAT NEEDS SONOGHR AM AND THINGS LIKE THAT. I DID NOT INTO THE ROOMS. I DID GO TO THE WISH CLINIC ON THE 09/21 AND I FOUND AN INFRACTION AND FOUND BIOHAZARD MATERIALON AN UNMARKED BAG WHICH SPREAD BACTERIA. WHERE DID I GO? I FOUND IT AT THE POINT OF CARE ROOM(ROOMS WHERE THEY TAKE VITALS SIGNS,BLOOD,URINE FROM PREGNANT WOMEN). I FOUND URINE WHEN I WAS CHECKING THE UNITS FOR NEEDLES AND I ENTERED THE POINTS OF CARE ROOM BUT I DID NOT ENTER THE EXAM ROOM. I NEVER GOT A CHANCE TO ENTER THE EXAM ROOM BECAUSE THE LADY -A NURSE BUT DO NOT KNOW HER NAME-SAID WHAT I WAS DOING THERE. -THEY HAD THE EXAMS ROOMS, THE POINT OF CARE ROOMS AND THE NURSE STATIONS.I TOLD THAT LADY THAT THEY CAN NOT PUT URINE IN AN UNMARKED CLEAR BAG-BUT THAT GOES INTO THE RED BAGS.THAT LADY WENT OFF AND EVEN CALLED THE POLICE.I WENT THERE AGAIN ON 09/22 BECAUSE I WANTED TO DOCUMENT THE INFORMATION THAT THEY WERE THROWING BIOZARD MATERIAL THAT WAY I CAN GIVE IT TO MY ✱MANAGER-DWAYNE. DID I INFORM HIM ON THE INCIDENT ON 09/21? YES, I TOLD HIMABOUT 4-5PM WHEN HE CAME IN AND HE SAID THAT HE WILL PASS THE INFO TO ANOTHER MANAGER. ✱ ABOUT WHAT GABRIELLE CROCKETT SAID, I DO NOT KNOW HER.TO BE HONEST ABOUT WHAT SHE SAID THAT I DID ON EITHER 09/18 OR 09/17, I DO NOT REMEMBER WALKINGS TOWARDS THE PATIENT ROOM. I DO THE SAME THING EVERY DAY AND I WENT TO THE BIOHAZARD ROOMS EVERY DAY. THEY HAD 2 BIOHAZARD ROOMS IN THE WISH CLINIC : ONE IS THE FRONT AND ONE OF THE CONTAMINATION ROOMS IN THE BACK. MY JOBS WAS TO CHECK OTHER AREAS. I WAS ALLOWED TO GO INTO THE EXAM ROOM IF THE PATIENT SAID THAT WE CAN COME IN AS LONG AS WE KNOCKED ON THE DOOR AND ANNOUNCED OUR SELVES. I WAS WEARING AND MY BADGE. MY UNIFORM WAS BLUE DICKIES PANT AND SHIRT WITH BY BADGE.I KNOCKED ON THE PATIENT DOOR AND I WANTED TO SEE IF THE PATIENT WAS THERE AND IF I COULD GO IN TO LOOK FOR BIOHAZARD MATERIAL. I NEEDED TO GO THERE BECAUSE NEEDLES AND URINE IS USED IN THAT AREA. THE URINE SUPPOSE TO BE IN RED BAGS BUT IN CLEAR BAGS. THEY DID NOT TELL ME THAT I WAS IN THE WRONG AREA. -ABOUT THAT I WALKED INTO ANOTHER PATIENT ROOM,I DO NOT REMEMBER. I WAS DOING MY JOB PREVENTING BACTERIA.IF THEY ARE TALKING ABOUT THE SAME AREA I AM NOT SURE BUT I KNOW THAT I TOOK PICTURES OF THE CARE ROOM ABOUT THE

*[handwritten right margin: He was Not Present T four and told him]*

VIOLATION AND I REPORTED TO MY MANAGER. THEN, I WENT THERE THE NEXT DAY WITH A PAPER AND PENCIL AND I SENT A PICTURE TO MY MANAGER ABOUT THE VIOLATION.
-ABOUT RESPONDING ANGRILLY "I AM CHECKING FOR SAFETY FOR MY WORKERS"NO, THAT IS NOT TRUE. THE NURSE OF WHOEVER CAME TO ME SHE WAS VERY CONFRONTA TIONAL "WHO ARE YOU.WHAT ARE YOU DOING HERE" LIKE I DID NOT WORK THERE. I TOLD HER " YOU CAN NOT THREW URINE IN A CLEAR BAG BUT IT GOES IN THE BIOHAZARD MATERIAL". I THINK SHE WAS UPSET BECAUSE I FOUND VIOLATIONS. -ABOUT WHAT SUSAN LAMB SAID, BIANCA SAT ME IN A TABLE AND SHE SAID THAT SHE HAS BEEN IN THE HEALTH INDUSTRY AND THAT A LITTLE URINE IN A CLEAR BAG WAS ACCEPTABLE. HE TOLD ME TO NOT GO THERE ANYMORE TO THAT CLINIC WHERE I HAD THE INCIDENT.I THINK THAT WAS AFTER EVERYTHING WAS OVER. I DID NOT GO THERE ANYMORE AFTER THAT. THAT WAS THE FIRST TIME THAT I HEARD THAT.THE OTHER EMPLOYEES HAD NOT TOLD ME THAT. -ABOUT WHAT THEY SAID THAT I ENTERED THE EXAMS ROOMS ON 09/21 WHEN THE NURSES ENTERED THE ROOMS,NO, I DID NOT EVEN HAD A CHANCE BECAUSE THE NURSE YELLED TO ME TO NOT ENTER. WHEN SHE YELLED, I WAS STANDING IN THE DOOR OF THE EXAM ROOM KNOCKING. I SAID ENVIRONMENT

SERVICE AND I AS WAS KNOCKING ON THE DOOR AND SHE SAID THAT I COULD NOT BE THERE. THAT WAS THE FIRST DAY AND THEN THE SECOND DAY I DID NOT HAVE ANYTHING WITH ANYBODY BECAUSE I JUST WENT WITH A PEN AND PAPER TO DOCUMENT. I DID NOT TALK TO ANYBODY AND I DID NOT GO TO THE EXAM ROOM AND NOT EVEN TO THE BIOHAZARD ROOM. -I NEVER TALKED TO ANY MANAGER UNTIL I GOT TERMINATED. I SENT AN E-MAIL TO MY MANAGER BUT I DID NOT GO TO SIT W/MANAGER TO EXPLAIN MY SITUATION. -I DO NOT KNOW WHY THEY SAID THAT IT WAS MY ASSIGNED AREA. EVERY FLOOR WAS MY RESPONSABILITY. -ABOUT WHAT BIANCA ROMERO SAID, SHE CAME TO ME AND I EXPLAINED THE REASON THAT I WAS THERE WAS BECAUSE I FOUND NEEDLES AND URINE IN A UNMARKED BAGS. SHE SAID "YOU THINK THAT YOU CAN GO INTO ANY ROOM". I TOLD HER NO BUT THAT I WAS FINDING NEEDLES IN THE TRASH AND THEY WERE COMING FROM AREA (THAT WAS BLANCA ROMERO CLINIC). BIANCA WAS OVER THE WISH CLINIC. I WAS SUPPOSE TO GO THE BIOHAZARD ROOMS. I STARTED GOING INTO THE OTHER AREAS BECAUSE I STARTED FINDING NEEDLES IN THE TRASH. IT WAS MY JOB TO GO INTO THE OTHER ROOMS TOO. THEY ARE SAYING THAT IT WAS NOT MY ASSIGNED AREA BECAUSE I FOUND VIOLATIONS. ABOUT WHAT BIANCA SAID I CAME DEFENSIVE AND LITTLE LOUD, -BIANCA IS THE ONE THAT CAME DEFENSIVE AFTER I TOLD HER ABOUT THE URINE IN THE CLEAR BAG. DWAYNE WAS THERE TOO. BIANCA DID NOT LIKE BECAUSE IT WAS HER AREA. I WAS NOT OUTRAGE AND DEFENSIVE. BIANCA SAID SHE YOU CAN PUT URINE IN A CLEAR BAG.____I TOLD HER THAT PARKLAND CAN BE FOUND IN VIOLATION. I HAVE NO PRIOR WARNING. I WAS NOT AWARED POLICIES/PROCEDURES ABOUT THE JOB THAT I WAS DOING. HOW I KNEW THAT I CAN GO INTO ANY ROOM? BECAUSE I WAS DOING THE SAME THING EVERY DAY SINCE I STARTED WORKING THERE- 18 MONTHS.

Page: **3**

## Benefits – Non-Monetary Determinations
### Fact Finding

SSN: **XXX-XX-4662**    **BRANDON  BASTON**         Case Nbr: **7**
Issue Nbr: **1**    Type: **FIRED**    Reason: **PERFORMANCE**
Stmt Nbr: **3**    of: **8**    Stmt of: **Employer**              Taken: **10-16-2015 02:42:37 PM**

Name: **STEFANIE HERNANDEZ**      Title: **\*\*CLAIMS  SPECIALIS**
Phone Stmt: **Y**    Claim ID: **2015-09-27**    Claim Dt: **09-27-2015**    Rebuttal: **N**    Footnote: **Y**

**Ever warned, placed on probation, or suspended because of job performance?_ _**

------------------------------------------------- END ------------------------------------------------
DATE AND TIME:                         LEFT MESSAGE FOR: ____EMPLOYER
LEFT MESSAGE ON OR WITH: VM                    ADVISED CALLING FOR INFORMATION
TO DETERMINE AN ISSUE.          DEADLINE TO RESPOND: ____10/20/15  BY 3PM
GAVE CONSEQUENCES FOR FAILURE TO RESPOND BY DEADLINE.      COMMENTS:

Page: **4**

## Benefits – Non-Monetary Determinations
### Fact Finding

SSN: **XXX-XX-4662**    **BRANDON  BASTON**         Case Nbr: **7**
Issue Nbr: **1**    Type: **FIRED**    Reason: **PERFORMANCE**

Laura Haynie

| From: | Katrina Young |
|-------|---------------|
| Sent: | Wednesday, September 30, 2015 11:09 AM |
| To: | Susan Lamb |
| Cc: | Gabrielle Crockett; Miriam Caceres |

To whom it may concern,

On the evening of 9/21/15 around 1730 a male EVS employee walked through the Gyn Clinic and proceeded down the hallway of POD 2.  Miriam Caceres Unit tech asked him if he need help.  As I got up from the nurses station I witnessed him removing the trash can from Room 8 and asked if he needed help.  He said no he was emptying the trash.  I then told him that if he need anything from the rooms, he needed to let one of us know because we have patients in the rooms and we can allow him to go into the rooms.  There was a female patient in the room that was undressed from the waist down with a sheet.  He then mumbled some words and walked away leaving the trash in the hallway.  I went in the room to check on the patient. Moments later he was seen pacing back and forth down the hallway with red and blue bags. Gabby Crockett, RN came to POD 2 concerned about his behavior.  Gabby asked what he was doing and responded, " I'm inspecting for safety for my employees".  I attempted to call the EVS Manager number we had listed, but it was incorrect. I then messaged our Unit  Manager Susan Lamb and called the non emergent number for the police department.  As I was giving a description the guy walks by again looking agitated.  The police arrived and we gave him a description and I walked him around the clinic to see if the guy was still here.  The EVS Manager came and I also gave her a description.  We never saw him again that evening.

Katrina Young, RN II
Gynecology Clinic
214-590-1711

1

Laura Haynie

**From:** Gabrielle Crockett
**Sent:** Wednesday, September 30, 2015 10:33 AM
**To:** Susan Lamb
**Cc:** Katrina Young; Priscilla Nino

To whom this may concern:

In regards to the EVS employee under review, I personally witnessed two of the aforementioned occassions that fueled the investigation. The first occured either 9/17/2015 or 9/18/2015 when the employee was stopped while entering into my assigned pod, Pod 3, and walking toward the patients' rooms. He was wearing a Parkland badge and dark blue scrubs. When asked if he needed help he answered "no" and proceeded to walk toward the rooms. I told the employee these were patient rooms and he was in the wrong area. He turned around and walked away.
The second occurance was on Monday, 9/21/2015. I was sitting at my assigned station, Pod 3, and noticed the same EVS employee seemingly pacing up and down the main hallway. He was wearing a Parkland badge, dark blue bottoms, a disposable scrub top and a face mask pulled below his chin. He appeared agitated which prompted me to turn to my co-worker Priscilla Nino and mention his behavior. I then walked to Pod 2 and was told by Katrina Young, RN that he had walked into a patient's room in her pod earlier. The next time he walked by me in the hallway I asked him what he was doing to which he replied angrily "I'm checking for safety for my workers". At this time K. Young attempted to call the EVS manager, and when she was unable to reach anyone, called the P.D.
While she was describing the employee to the dispatcher he walked by and turned into the nearby POC area where he left what he was carrying and exited the clinic.
The next day, Tuesday 9/22/2015, I was leaving work and passed the employee sitting at the bus stop on my way to the Trinity parking lot. I hurriedly walked by as he started saying something to me. I am unsure what he said at that time.

Gabrielle Crockett, RN 47385
WISH Gyn Clinic
214-590-5306

Laura Haynie

| | |
|---|---|
| From: | Susan Lamb |
| Sent: | Friday, September 25, 2015 4:02 PM |
| To: | Alan Williams |
| Cc: | Ruby Taylor; Dan Birbeck |
| Subject: | EVS event |

On Monday 9/21/15, the Gyn nursing staff reported to me to inform me that EVS technician, Brandon Baston, was going into patient rooms to pull trash while patients were still in the exam rooms, partially dressed. Per Gabby Crockett, RN, this EVS technician had the same behavior and been instructed not to enter the exam rooms the prior week. They again informed the tech that he was not allowed to enter the exam rooms with patients present. He stated that he was pulling trash, then continued to linger within the clinic behaving in a "creepy" manner. With concern, they contacted the Police department who responded promptly.
I promptly notified Bianca Romero, EVS manager, who immediately went to the Gyn Clinic to address the behavior.

On Tuesday morning, 9/22/15, I discussed the event with Bianca who assured me that the employee was instructed not to enter the Gyn clinic. That afternoon, the staff informed me that the same EVS technician, Brandon Baston, was in the clinic taking trash from the soiled utility rooms and lingering about in the hallways. I phoned Raymond Robinson and asked that he ask the employee to leave the clinic. Raymond instructed me that Brandon was not assigned to the Gyn clinic and had no business being there. Raymond stated he would notify Brandon's supervisor. Soon thereafter, Brandon was noted to have left the clinic.

Later that evening, as Gabby was walking to her car, Brandon made attempt to talk to Gabby, however, being concerned for her safety, she did not respond and quickly retreated to her car. Gabby stated this frightened her and she called another employee for safekeeping.

Please contact Dan Birbeck in PPD for any report that was made on 9/21/15.

I would appreciate you taking care to ensure that Mr. Baston does not come into the Gyn Clinic and or harass the nursing staff going to or from work.

Thanks,
Sue

Susan Lamb, MS, RN, WHNP-BC| Clinic Manager
Gynecology Specialty and Infusion Clinics | susan.lamb@phhs.org
Office: (469) 419-1975 | Pager: (214) 786-2259 | Fax: (469) 419-9223
Parkland

1

# Texas Workforce evidence

Written sworn in testimonies from Environmental Service Management
Team and Final Corrective action Report

INVESTIGATION STATEMENT

Employee Name: Bianca Romero          Employee Number: 32914

Work Extension: _____   Department: EVS

Date: 9 28 15

Note to complainant: If you are the complainant, please state your allegation. State the name(s) of individual(s) who witnessed the incident. Specify the date, time and description of what occurred. Include what resolution you are seeking regarding your complaint.

Note to witness: If you are the witness, please describe what you observed and/or heard regarding the alleged incident. Specify the date, time, place and description of what occurred. Include names of anyone else who witnessed the incident.

Note to accused: If you are the accused, please respond to the allegation. Specify the date, time, place and description of what occurred. Include names of anyone else who witnessed the incident.

On 9.21.15 I received a call from the Gyn Clinic manager, Susan Lamb, informing me that an EVS employee was going into occupied patient rooms, even after being asked not to. When I arrived at the clinic he was no longer there. Charge nurse in the clinic had called PDPD and there was an officer there looking for our employee. Based on discription, we were able to know that the person was Brandon Baston. EVS manager Damien had seen him in the clinic moments earlier while making his rounds. The police officer left and asked if we were going to handle the situation and we told him we would take care.

Complete and sign on the back

OF it. I called Jason, and shift director, and he provided me with Brandons pager number. I paged multiple times and didnot receive a response back. Damien and I looked all over the WISH Clinic building, and while we looked in the OB comp Clinic the staff there complained about him going through their trash in the lab area. We later found him in the cafeteria. He had his pager with him, and the pages had come through. I questioned him about why he went into pt. rooms after being asked not to, but he stated that he has the right as an employee to go into any room as long as he knocks. He is not assigned to work WISH Clinics and definitely not in patient rooms.

I have fully disclosed above all such facts, reasons, and persons. I acknowledge the following:

- I have been advised not to share any of the information that we have discussed today and that all of the issues discussed in this meeting are to remain confidential.
- I have been advised that Parkland Health & Hospital System has a no tolerance policy on retaliation. Anyone making a complaint will not be retaliated against, even if a complaint made in good faith is unfounded. In addition, witnesses will be protected against retaliation. Any identified retaliation will be dealt with through corrective action, up to and including termination.
- I have been advised that harassment accusations that are determined to be false will also result in corrective action, up to and including termination.

Signature: Brianna St Romero   Employee Number: 32914

Date: 9-28-15

INVESTIGATION STATEMENT

Employee Name: Damieyon Evans          Employee Number: _____

Work Extension: _____   Department: _ES__

Date: _9-23-15_

Note to complainant:  If you are the complainant, please state your allegation.  State the name(s) of individual(s) who witnessed the incident.  Specify the date, time and description of what occurred.  Include what resolution you are seeking regarding your complaint.

Note to witness:  If you are the witness, please describe what you observed and/or heard regarding the alleged incident.  Specify the date, time, place and description of what occurred.  Include names of anyone else who witnessed the incident.

Note to accused:  If you are the accused, please respond to the allegation.  Specify the date, time, place and description of what occurred.  Include names of anyone else who witnessed the incident.

After looking for Mr. Basler, we went to the cafeteria and saw Brandon in line buying some lunch. Once he exited the line we asked him to come sit at the table and discuss the situation that occured earlier in the wish unit. After being questioned he became defensive, and his verbal tone became a little loud. Bianca asked a few more general questions about policy and job duties, he stated how he felt about his duties and got up from the table and walked away.

Complete and sign on the back

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

----------------------------------------

I have fully disclosed above all such facts, reasons, and persons. I acknowledge the following:

- I have been advised not to share any of the information that we have discussed today and that all of the issues discussed in this meeting are to remain confidential.
- I have been advised that Parkland Health & Hospital System has a no tolerance policy on retaliation. Anyone making a complaint will not be retaliated against, even if a complaint made in good faith is unfounded. In addition, witnesses will be protected against retaliation. Any identified retaliation will be dealt with through corrective action, up to and including termination.
- I have been advised that harassment accusations that are determined to be false will also result in corrective action, up to and including termination.

Signature: _____       Employee Number: _____

Date: _9-23-15_

INVESTIGATION STATEMENT

Employee Name: __John Walls__                    Employee Number: __62040__

Work Extension: __70209__    Department: __EVS__

Date: __09/24/2015__

Note to complainant:   If you are the complainant, please state your allegation.  State the name(s) of individual(s) who witnessed the incident.  Specify the date, time and description of what occurred.  Include what resolution you are seeking regarding your complaint.

Note to witness:   If you are the witness, please describe what you observed and/or heard regarding the alleged incident.  Specify the date, time, place and description of what occurred. Include names of anyone else who witnessed the incident.

Note to accused:   If you are the accused, please respond to the allegation.  Specify the date, time, place and description of what occurred.  Include names of anyone else who witnessed the incident.

On Tuesday, Sept. 22, 2015, I attended the daily WISH huddle, in which the subject

of an EVS employee was entering exam rooms within the Gynecology Clinic.  It was

stated that the employee, now identified as Brandon Baston, entered the exam rooms

while the nursing staff was attending to patients.  It was said that Mr. Baston was

questioning the nursing staff about how they were disposing of urine samples.

Complete and sign on the back

I have fully disclosed above all such facts, reasons, and persons. I acknowledge the following:

- I have been advised not to share any of the information that we have discussed today and that all of the issues discussed in this meeting are to remain confidential.
- I have been advised that Parkland Health & Hospital System has a no tolerance policy on retaliation. Anyone making a complaint will not be retaliated against, even if a complaint made in good faith is unfounded. In addition, witnesses will be protected against retaliation. Any identified retaliation will be dealt with through corrective action, up to and including termination.
- I have been advised that harassment accusations that are determined to be false will also result in corrective action, up to and including termination.

Signature: _J. Walls, RN_  Employee Number: _62090_

Date: _7/24/15_

## INVESTIGATION STATEMENT

Employee Name: _Raymond Robinson_     Employee Number: _32700_

Work Extension: _214-716-977_ Department: _EVS_

Date: _09/23/15_

Note to complainant:   If you are the complainant, please state your allegation.   State the name(s) of individual(s) who witnessed the incident.   Specify the date, time and description of what occurred.   Include what resolution you are seeking regarding your complaint.

Note to witness:   If you are the witness, please describe what you observed and/or heard regarding the alleged incident.   Specify the date, time, place and description of what occurred.   Include names of anyone else who witnessed the incident.

Note to accused:   If you are the accused, please respond to the allegation.   Specify the date, time, place and description of what occurred.   Include names of anyone else who witnessed the incident.

_I was meeting with Susan Lamb which is the
Unit Manager of the Clinic. She stated that
Brandon Brewer our EVS staff Member was walking
looking creepy and scaring people. Susan called
back around 7.00pm and stated Brandon was
back in the Clinic and people were around.
The Clinic is not Brandon's work area and I'm not
Sure why he was there._

Complete and sign on the back

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

I have fully disclosed above all such facts, reasons, and persons.  I acknowledge the following:

- I have been advised not to share any of the information that we have discussed today and that all of the issues discussed in this meeting are to remain confidential.
- I have been advised that Parkland Health & Hospital System has a no tolerance policy on retaliation.  Anyone making a complaint will not be retaliated against, even if a complaint made in good faith is unfounded.  In addition, witnesses will be protected against retaliation.  Any identified retaliation will be dealt with through corrective action, up to and including termination.
- I have been advised that harassment accusations that are determined to be false will also result in corrective action, up to and including termination.

Signature: _____     Employee Number: 32700

Date: 09/23/15



## PARKLAND HEALTH & HOSPITAL SYSTEM
### CORRECTIVE ACTION REPORT

Employee Name: Brandon Baston _____ Emp. #: 44397 _____ Dept. #: 80900 _____

Job Title: Environmental Svc Tech I _____ Date of Employment: 12 / 30 / 2013 Salary Review Date: ---- / ---- / ----

| Reason for Conference (check one): | Previous Counseling(s) for same policy violation Show dates of Counseling: | |
|---|---|---|
| ☐Verbal Warning<br>☐Written Warning<br>☐Final Warning<br>☑Termination *(see Termination Checklist)*<br>☐Investigative Suspension<br># of Days: _____<br><br>Return to Duty: ___/___/___ | ___/___/___ Verbal Warning<br><br>09 / 25 / 2014 Written Warning<br><br>___/___/___ Suspension<br><br>03 / 10 / 2015 Final Warning | Copy of Employee Problem Solving Procedure Given _____<br><br>Check out process _____ |

1. Violation of Procedure (Number and Title): 6000-700 Employee Standards/Expectations

2. Describe reason for Corrective Action. Attach applicable documentation and please use additional pages for continuation. On 09/21 and 09/22/2015, you were observed in the WISH clinic, entering the exam rooms while the nursing staff was tending to patients. This was not your assigned area for either shift. At least twice the nursing staff directed you not to enter the exam rooms, and to contact them if you needed entry to these areas. Management made multiple attempts to contact you via your pager to discuss the situation and you were unresponsive. Management then approached you in the cafeteria to discuss and you offered no plausible explanation for being out of your assigned area. Your actions created a disruption and distraction for those providing patient care. Intimidating and disruptive behaviors can foster medical errors, contribute to poor patient satisfaction and lead to preventable adverse outcomes.

3. State recommendations. List policies, procedures, job responsibilities reviewed. State what will happen if recommendations are not followed. State next review date if applicable.
For the health/safety of our employees, patients, visitors and the protection of property and rights, Parkland has established standards of performance and behavior. All employees are expected to perform duties as assigned and follow Parkland procedures as well as standards of service excellence/care. Your behavior was significantly below professional standards and expectations. Management has determined to terminate your employment, effective immediately.

4. Employee's Comments:

Date of Conference: 10 / 1 / 15

**Signatures:**

Counselor: Alan Williams _____ Ext.#:_____

Employee: refuse to sign _____

Witness of Employee's refusal to sign: _____ 10/1/15

ID #: 44397

Date: 10 / 01 / 2015
Reviewed by: Laura Haynie          **Reviewed by HR**
Date: ___/___/___
Dept. Director: _____

Your signature indicates **only** that you have received this Corrective Action. It does not indicate agreement with the statements.

*Termination Checklist: *Initial after completion and submit to HR Records within 3 calendar days from date of termination.*
_____ Reviewed by Human Resources (if applicable)          _____ Involuntary Resignation Form
_____ HR Records Action Form          _____ Payroll Adjustment Form

| Distribution: | **Verbal Warning** | Original – Department File | Copy 1 – Employee | |
|---|---|---|---|---|
| | **All Other Corrective Action** | Original – Employment Experience | Copy 1 – Department File | Copy 2 – Employee |

PS 4164 08/01/05 RTB

# Case Numbers

- EEOC case 450-2016-03226
- Texas Workforce case 1998766
- Parkland Police report case 1500631
- Parkland Ethics Compliance case 701830069301 ( passcode 1016 )

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

RECEIVED
2 4 2017
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Brandon Boston

**(b)** County of Residence of First Listed Plaintiff  Dallas, Tx.
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Searching

**DEFENDANTS**
Parkland Hospital

County of Residence of First Listed Defendant  Dallas County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

3-17CV2259-K

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|                        | PTF | DEF |                                              | PTF | DEF |
|------------------------|-----|-----|----------------------------------------------|-----|-----|
| Citizen of This State  | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                  Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|-|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☐ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    Another District
    *(specify)*

☐ 6 Multidistrict
    Litigation -
    Transfer

☐ 8 Multidistrict
    Litigation -
    Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:  Discrimination at work.

**VII. REQUESTED IN**
**COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

**VIII. RELATED CASE(S)**
**IF ANY**
*(See instructions)*
JUDGE

DOCKET NUMBER  EEOC 450-2016-0322
                         TWC 1998766
Police report 1500631 (1016)
Ethics 70183006930

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE