IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON BASTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-2259-K-BN |
| | § | |
| PARKLAND HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This employment discrimination action filed by a plaintiff proceeding *pro se* has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade.

Defendant Dallas County Hospital District d/b/a Parkland Health & Hospital System ("Parkland") filed a motion for summary judgment. *See* Dkt. Nos. 42, 43, & 44. Plaintiff Brandon Baston filed a response. *See* Dkt. Nos. 48, 49, & 50. And Parkland filed a reply brief. *See* Dkt. No. 51.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss Mr. Baston's claims with prejudice.

**Applicable Background**

Mr. Baston, who is African-American, filed a *pro se* complaint alleging that he "was discriminated against while working at Parkland Hospital on more than one

occasion" – including "because [he] was denied a police report that was generated by false testimony" – and that he was terminated after he complained about discrimination. Dkt. No. 3 at 1. Baston's complaint was amended by his verified responses to the Court's screening questionnaire. *See* Dkt. No. 8. Attached to his responses is an unsigned charge of discrimination asserting that race discrimination in violation of Title VII of the Civil Rights Act of 1964 occurred between September 21, 2015 and September 30, 2015 and setting out that

> Parkland Memorial Hospital discriminated against me based on my race (African-American). I was falsely accused of frightening Parkland Memorial Hospital staff members and being out of my designated area, even though I was wearing my badge and I was not violating any hospital policy. Similarly situated non-African American Parkland Memorial Hospital employees were not treated in such a disparate manner. Parkland Memorial Hospital ultimately terminated me based on this incident without following its own progressive discipline policy.

*Id.* at 14.

## Legal Standards and Analysis

I.    <u>Summary Judgement Standards</u>

"In the employment discrimination arena, the 'salutary function of summary judgment' is that it 'allows patently meritless cases to be nipped in the bud.'" *Molden v. East Baton Rouge Sch. Bd.*, 715 F. App'x 310, 313 (5th Cir. 2017) (per curiam) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).

And, under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual

"issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and

footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the

existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or

defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"[T]he the traditional leniency afforded to a pro se plaintiff does not excuse [him] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")). And, "[a]lthough courts should advise *pro se* prisoners of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)).

That said, the verified complaint and sworn interrogatory answers of a *pro se*

litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

II.    <u>Exhaustion</u>

Parkland asserts in its answer an affirmative defense that Mr. Baston's "claims for relief are barred and/or limited by [his] failure to exhaust the administrative remedies available to him." Dkt. No. 18 at 6, ¶ 3. And it now moves for summary judgment on that affirmative defense as applied to Mr. Baston's contention that his current claims are based on his interaction with Parkland police officers in January 2015. Parkland explains:

> Plaintiff's EEOC charge alleges that he was falsely accused of frightening hospital staff members and being out of his assigned area and ultimately terminated. According to the Charge, the earliest alleged act of discrimination was September 21, 2015 – the date of the incident that led to Plaintiff's termination. Plaintiff's EEOC charge makes no mention of (1) a Parkland employee reporting Plaintiff to the Parkland Police on January 21, 2015; or (2) Parkland police engaging in race discrimination when it refused to give Plaintiff a copy of the police report on or about January 27, 2015. As such, Plaintiff failed to exhaust his administrative remedies as to these allegations, and he cannot use them as a basis of recovery in this case.

Dkt. No. 43 at 17-18 (footnotes omitted); *see id.* at 18 (alleging as a further basis to find these allegations unexhausted that the January 2015 incidents occurred more than 300 days before Mr. Baston filed his charge of discrimination on June 20, 2016).

Parkland also asserts that Mr. Baston's retaliation claim is unexhausted based

on the charge – in which, in addition to failing to check the box for retaliation, Mr. Baston failed to allege facts to show that he participated in an activity that could arguably be considered protected by anti-discrimination laws. *See, e.g.,* Dkt. No. 43 at 22 (further noting that "Plaintiff's termination on October 1, 2015, preceded the filing of the EEOC Charge on June 20, 2016").

While a statute's "administrative exhaustion requirement is not a jurisdictional bar to suit," *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 306 (5th Cir. 2018) (discussing Title VII), that "does not mean that this requirement should be ignored," *id.* at 307.

> "The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." Administrative exhaustion is important because it provides an opportunity for voluntary compliance before a civil action is instituted. For this reason, Title VII requires administrative exhaustion.

*Id.* (quoting *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)); *see also, e.g., Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) ("It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted [her] administrative remedies by filing a charge of discrimination with the EEOC." (citations omitted)).

> In determining whether a plaintiff has exhausted a particular claim, [the Fifth Circuit has] noted that "the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788-89. To balance these considerations, "[courts in this circuit interpret] what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably

-8-

be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[Courts should] engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

*Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017).

Even applying this broad standard to the facts in Mr. Baston's charge, none of those allegations – limited to Mr. Baston's allegedly "frightening Parkland ... staff members" and his being outside his "designated area" at the end of September 2015 – could reasonably have been expected to lead to an EEOC investigation into (1) instances in January 2015 involving Parkland's police department or (2) a claim based on retaliation. *See, e.g., Draper v. Willis Knighton Med. Cent.*, Civ. A. No. 15-1968, 2017 WL 3711809, at *1 (W.D. La. Aug. 28, 2017) ("An employee seeking judicial relief from proscribed discriminatory employment practices must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC no more than 300 days after the alleged discriminatory employment action occurred.... A court analyzing the scope issue must engage in a 'fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.'" (quoting *Pacheco*, 448 F.3d at 789)).

Therefore, drawing all reasonable inferences in favor of Mr. Baston, Parkland has carried the heavy burden of showing that beyond peradventure there are no genuine and material fact disputes on its affirmative defense that (1) January 2015 instances included in Baston's pleadings and/or discovery responses and (2) a claim of retaliation are outside the scope of an expected EEOC investigation given the facts

alleged in the charge, entitling Parkland to summary judgment as a matter of law as to its defense, and requiring that the Court exclude the January 2015 instances as a basis for the discrimination Mr. Baston alleges and dismiss his claim of retaliation.

III.    <u>Race Discrimination</u>

"Title VII prohibits discrimination 'because of' a protected characteristic, including race." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216, 219 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)). And, in the absence of direct evidence, Title VII discrimination claims are analyzed under the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under which a plaintiff must first establish a prima facie case of discrimination before the case may proceed. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Outley*, 840 F.3d at 216, 219.

To establish a prima facie claim of discrimination, a plaintiff must show that he

(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Id.* at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Outley*, 840 F.3d at 216.

"[T]he third prong ... require[s] an 'ultimate employment decision' or its factual equivalent." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 396-97 (5th Cir. 2016) (per curiam) (citing *McCoy*, 492 F.3d at 560; *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). This "judicially-coined term refer[s] to an employment

decision that affects the terms and conditions of employment ... such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson*, 764 F.3d at 503 (citations omitted); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (holding that the anti-discrimination provision of Title VII "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace").

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557 (footnotes omitted); *see, e.g., Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827-28 (5th Cir. 2015) (affirming the district court's recognition that, even where a plaintiff establishes a prima facie case, an employer "would nevertheless be entitled to summary judgment if it 'articulated a legitimate, nondiscriminatory ... reason for its employment action' and [the plaintiff] could not show a triable issue of fact as to whether 'the employer's proffered reason is not true but instead is a pretext' for a discriminatory purpose" (quoting *McCoy*, 492 F.3d at 557; original brackets omitted)).

Mr. Baston fails to establish a prima facie case of discrimination. First, given that Parkland terminated him on October 1, 2015 based on incidents that occurred in late September 2015 – Mr. Baston's unauthorized presence in Parkland's Women

Infant & Specialty Division, *see* Dkt. No. 44-1 at 141-44, Declaration of Laura Hayne,

Employee Relations Advisor for Parkland – the undersigned will assume for purposes

of determining whether Mr. Baston has established a prima facie case of

discrimination that an adverse employment action occurred. But, even if Mr. Baston

has established the first three prima facie requirements – that he, as "a member of a

protected class" who "was qualified for the position at issue," suffered an adverse

employment action – he still has not established the fourth requirement by showing

that he "was replaced by someone outside his protected group or was treated less

favorably than other similarly situated employees outside the protected group." *McCoy*,

492 F.3d at 556. He has come forward with no competent summary judgment evidence

to show that a particular non-African American employee in his position and "under

nearly identical circumstances" was treated more favorably. *Lee v. Kansas City S. Ry.*

*Co.*, 574 F.3d 253, 260 (5th Cir. 2009).[1]

---

[1] *See also Wright v. Chevron Phillips Chem. Co., L.P.*, 734 F. App'x 931, 934 (5th Cir. 2018) (per curiam) ("Both the comparator and the conduct must be 'nearly identical' (except for the protected characteristic) to the person and situation in question yet the two yielded dissimilar results." (quoting *Outley*, 840 F.3d at 217-18 (quoting, in turn, *Lee*, 574 F.3d at 260))); *Noble v. Lear Siegler Svcs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014) (per curiam) (rejecting an African-American plaintiff's claim that he established this prima facie element by asserting that "five Caucasian men in his unit kept their jobs" because he failed to "show that these comparators were under 'nearly identical circumstances'" by presenting "evidence regarding the comparators' job descriptions, qualifications, experience, work and disciplinary history, or other information that would indicate that they were similarly situated" (quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001))); *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) ("An employee must proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status

## Recommendation

The Court should grant Dallas County Hospital District d/b/a Parkland Health & Hospital System's motion for summary judgment [Dkt. No. 42] and dismiss Plaintiff Brandon Baston's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 31, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

_____

determined by the same person, and have essentially comparable violation histories.'" (quoting *Lee*, 574 F.3d at 260)).